UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00033-MOC-DCK

| | |
|---|---|
| SUSAN DYER, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>CITY OF GASTONIA, )<br>)<br>)<br>Defendant. ) | ORDER |

**THIS MATTER** is before the court on Plaintiff's Motion for Attorneys' Fees (#58) of $148,684.35. Plaintiff has also included in her petition a Bill of Costs; however, the Bill of Costs is, in accordance with the Local Civil Rules of this court, for determination by the Clerk of Court. As indicated in the previous Order, this court's inquiry concerns statutory allowable attorney fees. Defendant has responded and pointed out that plaintiff has not parsed her attorney fees between the claim on which she prevailed and the claims on which she did not prevail. The court joins in defendant's concerns as it appears that counsel's proposed fee even includes billing for hours expended in correcting problems in the Complaint this court identified at summary judgment.

**I.**

Title VII allows district courts, in their discretion, to award reasonable attorneys' fees to prevailing parties in actions brought seeking redress under the civil rights laws. 42 U.S.C. § 2000e–5(k). There is no dispute that plaintiff is the prevailing party in this case. "Prevailing plaintiffs in Title VII actions ordinarily are entitled to attorneys' fees unless special circumstances militate against such an award." E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 516 (4th Cir. 2012) (citing

Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 417 (1978)).

The Supreme Court stated in Hensley v. Eckerhart, 461 U.S. 424 (1983) that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. at 433. The Fourth Circuit has adopted twelve factors that courts should consider when determining this "lodestar" amount. See Barber v. Kimbrell's. Inc., 577 F .2d 216, 226 n. 28 (4th Cir. 1978) (adopting factors set forth in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)). These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the question raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity cost in pressing the litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees in similar cases. See Johnson. 488 F.2d at 717–19. A party seeking attorneys' fees must set forth complete and accurate time records to enable the court to make an appropriate calculation and award. See Daly v. Hill, 790 F.2d 1071, 1079 (4th Cir.1986).

The party seeking an award of attorneys' fees also has the burden of demonstrating a *reasonable* fee. Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990); McAfee v. Boczar, 738 F.3d 81, 91 (4th Cir. 2013), as amended (Jan. 23, 2014). As noted by the Fourth Circuit in Plyler,

> [D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

Id. (internal quotation marks and citations omitted). "[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994)). In a discussion most applicable to the situation presented here, the appellate court held:

> After calculating the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (internal quotation marks and citation omitted). Ultimately, the court is not required to subtract hours for a dropped or unsuccessful claim if the court finds that the underlying "common core of facts or related legal theories" can be treated together. Wileman v. Frank, 780 F. Supp. 1063, 1066 (D. Md. 1991).

## II.

Plaintiff requests attorneys' fees in the amount of $148,684.25. Included in that figure are billings for paralegals, associates, and interns. Strikingly, counsel for plaintiff seeks fees for interns at the rate of $130-$135 per hour. Maloney Affidavit (#59) at ¶ 9.

The court first considers the reasonableness of hourly rates requested by plaintiff's attorneys. The court has considered the supporting Affidavits of Attorneys Johnson and Elliot and determines that the hourly rates sought by plaintiff's counsel for attorney time are reasonable when coupled with the court's own knowledge of prevailing rates in the legal community.

As to paralegal time, the court finds that the hourly rate for paralegal time is also appropriate when the court considers how such time has been billed in other cases in the Charlotte legal community.

As to the hourly rate for interns, close review of the Affidavit of Attorney Johnson does not reveal the basis for his conclusion that billing for legal interns at $150 per hour is an appropriate rate. While plaintiff seeks a rate of between $130-135 per hour, such a rate is more than double what this court pays seasoned career law clerks -- who are lawyers. The court will reduce such amount to $75, which may still be too high based on a lack of professional licensing and experience, but is appropriate when overhead in running a law firm is taken into account.

So adjusted, the court agrees that the rates sought are reasonable and consistent with the prevailing market rate in the Western District of North Carolina for attorneys with similar experience handling similar cases, especially in the Charlotte Division. The court will thus apply such rates when calculating the fee award in this case.

**III.**

The court next addresses whether plaintiff is entitled to compensation for all hours incurred in preparation of her case. Plaintiff's counsel seeks fees for 749 billable hours, a total number which counsel has not subdivided by attorney, associate attorney, paralegal, or intern. Rather, counsel has provided what appear to be her billing sheets that identify hours on a daily basis by

the initials of the provider. No key is provided as to who these initials belong to or what job they performed. The court agrees with the defendant that these time sheets are vague in that they do not adequately describe the tasks that were accomplished. Indeed, some billings are troubling: on June 2, 2016, the firm managed to bill plaintiff for *65 hours* of work accomplished in *one* work day, for a one day fee of $11,838.75. Mahoney Affidavit (#59) at 14. While the court is sure such billing could be justified, that justification is not readily apparent from the billing.

**IV.**

Finally, the court considers the twelve factors for calculating the "lodestar" amount.

    a. *Time and Labor Expended*

From original complaint to the court's entry of its decision, this case lasted 18 months. It included below average motion practice and a bench trial which lasted three days.

    b. *Novelty and Difficulty of Questions Raised*

The complaint here involved questions of discrimination under Title VII. While not a novel question of law, proving Title VII discrimination poses a high degree of difficulty, as discrimination claims are routinely rejected by juries and courts at trial. Plaintiff was successful on her claims of retaliation, but was unable to prove the a *prima facie* case of gender or sex discrimination as she could not show that she was replaced by a person outside the protected class, and, even if she had shown a *prima facie* case, she had not shown that defendant's reason for eliminating her position was a mere pretext for gender or sex discrimination under Title VII. In addition, plaintiff failed to show that she was subjected to a hostile work environment case or, for the same reasons, that there was a violation of the NCEEPA.

The major stumbling block for plaintiff came at summary judgment. While the court knows of lead counsel's experience in the field, the original Complaint was not a model of clarity. As this court made clear in its Order (#23) on summary judgment,

> At oral arguments, the court discussed with Plaintiff exactly what claims she is pursuing pursuant to Title VII. The complaint titles Count One as "Title VII- Gender Discrimination and Retaliation." See Complaint (#1-1) at ¶ 33-36. While the body of the complaint generally alleges that Plaintiff suffered from a hostile work environment, see, e.g., Complaint (#1-1) at ¶ 17, 18, 24, there is no mention of a hostile work environment within the paragraphs of Count One. Plaintiff clarified at oral arguments that under Title VII, she is pursuing a hostile work environment claim, a retaliation claim, and a claim for discriminatory discharge on the basis of gender.
>
> ***
>
> The court agrees that it was unclear from the face of the complaint that Plaintiff intended to assert a hostile work environment claim, as Count One expressly listed "Discrimination" and "Retaliation," but made no mention of a hostile work environment. However, the court finds that a claim for "Discrimination" under Title VII could plausibly encompass a hostile work environment claim. Though it would behoove Plaintiff to state her claims with greater precision in the future, the court finds that because Plaintiff alleged a hostile work environment several times in the body of the complaint, she should be allowed to amend her pleading to more clearly state such a claim. See Fed. R. Civ. P. 15(a) (allowing a party to amend a pleading with the court's leave).

Id. at 9-10. The court then granted plaintiff leave to amend her complaint and to therein "clearly set forth the grounds for relief sought for her hostile work environment claim." Id. at 10. The court also notes that plaintiff dismissed her second and third claims only after the summary judgment hearing was conducted.

    c.  *Skill Required to Perform Legal Services*

In light of the difficulty of establishing a case for retaliation under Title VII against an employer, properly performing the legal services required in this case demanded hard work and a high degree of skill from plaintiff's attorneys.

d. *Opportunity Costs of Litigation*

As mentioned above, litigating this case took a considerable amount of time and effort, which plaintiff's attorneys might have instead devoted to other cases and projects.

e. *Customary Fee for Similar Work*

Based on the 2016 Laffey Matrix, the fees charged by plaintiffs' lawyers and paralegals are well within the reasonable range for this type of work. http://www.laffeymatrix.com/see.html For the reasons discussed above, the court finds the intern rate to be unreasonable and has cut that rate to $75.00.

f. *Attorneys' Expectations at Outset of Litigation*

While plaintiff's attorneys implicitly believed from the outset that they had a case against defendant, they were also aware of the risks involved and that Defendant's liability was not a foregone conclusion.

g. *Time Limitations Imposed*

This factor is not applicable here.

h. *Amount in Controversy*

Given the award of $22,000.00, it is fair to say the amount in controversy was not significant when compared with other Title VII cases in this district. However, the court believes plaintiff received a substantial benefit from such award.

i. *Experience, Reputation, and Ability of Attorneys*

As summarized above, plaintiff was represented by capable attorneys.

j. *Undesirability of Case*

This factor is not applicable here.

k. *Nature and Length of Attorney-Client Relationship*

This appears to be the first time plaintiff has been represented by these attorneys.

l. *Fee Awards in Similar Cases*

Based on other cases, the proposed award of attorneys' fees in this case is excessive. Of particular note is the recent case of Taylor v. North Carolina Dept. of Revenue, 3:12cv860 (W.D.N.C. 2015). That too was a Title VII case and was a three day trial before a jury. There the jury returned an award in favor of plaintiff for approximately $9000 in back pay and compensatory damages in the amount of $225,000. The court later remitted the compensatory damages award, which was settled before retrial on compensatory damages. For attorney's fees, counsel sought approximately $71,000.00 for 204 hours of attorney time. Importantly, plaintiff's counsel in Taylor dropped her race discrimination claim and proceeded to trial only on her claim that she was demoted and denied promotions due to her gender. That case was on the court's docket for two years and counsel billed for less than 1/3 the total hours billed in this case, albeit here the total hours are a conglomeration of attorney, paralegal, and intern time.

There is also precedent to award attorneys' fees even when they exceed the jury's award of damages in Title VII cases, which makes the instant motion appear even more reasonable. See Certain v. Potter, 330 F. Supp. 2d 576, 592 (M.D.N.C. 2004). It is also worth noting that Title VII discrimination cases in the Fourth Circuit have resulted in awards of fees totaling hundreds of thousands of dollars. See Basil v. Maryland Transp. Auth., No. CIV.A. RDB-12-0556, 2015 WL 505951, at *7 (D. Md. 2015); Wileman v. Frank, 780 F. Supp. 1063, 1069 (D. Md. 1991).

**V.**

Putting aside the court's concern with rates charged for interns of unknown qualifications, the court finds that the total hours billed – more than 700 – are excessive when all of the above factors are considered. Moreover, a fee award of $148,000.00, when all that was attained at trial was back pay in the amount of $22,000.00, is somewhat excessive. Farrar v. Hobby, 506 U.S. 103, 114 (1992). As Justice O'Connor stated in her concurrence, a "substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical." Id. at 121 (O'Connor, J., concurring) (emphasis added). While the court knows from its own experience as a trial lawyer that attorneys prepare in different ways and that there is a wide range of acceptable methodologies for trial preparation, the court cannot award plaintiff's counsel the total fee of $148,000.00 based on the totality of what it observed in this case. Indeed, the original Complaint was troublesome as discussed in the summary judgment Order and while the court has no doubt that plaintiff's law firm expended more than 700 hours to prepare for this trial, the court believes plaintiff's firm may have "overstaffed" this case as the Supreme Court noted in Hensley, supra, at 434. When coupled with the results achieved in similar cases tried before the undersigned in the last year, the proposed fee is excessive. Further, the court agrees with defendant that the method of presenting hours and justification is vague and has resulted in "block billing," which has inhibited the court in its effort to discern with precision how the 700 plus hours were billed and precisely why those hours were needed. Because the presentation of hours has inhibited a mathematical calculation, the court will determine what is a fair and reasonable fee by considering all the factors and comparing that with the total fee requested. Fortunately, this was a

bench trial and the court closely considered the evidence presented at trial as well as the professional services provided by counsel.

When the court considers the results obtained, the difficulties encountered at summary judgment, the trial of this matter, fees awarded in nearly identical cases by attorneys who billed at nearly identical rates, and all the factors discussed above, the court finds that a total attorney's fee of $75,000 is both a fair and reasonable fee.  See McAfee, 738 F.3d at 93-95.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Attorneys' Fees (#58) is **GRANTED**, and the Judgment in this case shall reflect an award of $75,000.00 as a reasonable attorney's fee, payable to counsel for plaintiff by defendant.

The Clerk of Court is instructed to now enter Judgment reflecting the award of $22,000.00 to plaintiff in back pay and an award of $75,000.00 to plaintiff's counsel as a reasonable attorney's fee.

Plaintiff shall submit her Bill of Costs to the Clerk of Court as provided in the Local Civil Rules.

Signed: August 19, 2016



Max O. Cogburn Jr.
United States District Judge